J-S70022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.B. | : | |
| | : | |
| Appellant | : | No. 1029 MDA 2017 |

Appeal from the Order Entered May 26, 2017
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  2015-FC-40549

BEFORE:  GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 18, 2017**

Father, J.B., appeals from the order entered May 26, 2017, denying his petition for modification of an existing custody order with respect to his son, N.B., born in July of 2003, and his daughters, M.B.B., born in April of 2006, G.B., born in March of 2008, and M.B., born in March of 2009 (collectively "the Children").  After a thorough review of the record, we affirm.

We summarize the history of this case as follows.  The instant custody dispute stems from an incident that occurred when Father and Mother, D.B. a/k/a D.M.,[1] were residing in Monroe County, New York.  On October 28, 2012, M.B., who was three years old at the time, was sleeping in between

_____

[1] Mother is remarried.

her parents in bed. Mother testified that she awoke to M.B. crying and yelling that Father was "squishing" her. Respondent's Exhibit 1 (labelled as Defendant's Exhibit 1–Supporting Deposition). Mother witnessed Father lying on top of M.B. and rubbing his exposed penis against M.B.'s exposed vagina. Court's Exhibit 1 (New York Criminal Complaint). Mother grabbed M.B. and took her into the hallway where M.B. said, "Daddy took my underwear pants." N.T., 5/8/17, at 49.

The next morning, all of the Children were interviewed by New York Child Protective Services ("NYCPS"). Afterwards, Father was arrested and charged with sexual abuse. Father was also ordered to have no contact with the Children.

Subsequently, Mother filed for divorce. On October 4, 2013, Father and Mother entered into a Matrimonial Stipulation. Pursuant to the stipulation, Mother was granted sole custody of the Children, and Father was permitted to have supervised visits upon his pleading guilty to endangering the welfare of a child, which would be in full satisfaction of the criminal complaint.

On October 28, 2013, Father entered an **Alford**[2] plea[3] to the charge of endangering the welfare of a child. In exchange for his plea, Father received

---

[2] **North Carolina v. Alford**, 400 U.S. 25 (1970).

[3] This Court has explained an **Alford** plea as follows:
*(Footnote Continued Next Page)*

a one-year conditional discharge with the following provisions: (1) orders of protection issued in New York would be modified to no-offensive-conduct orders; (2) Father would voluntarily participate in and engage in counseling to address anger management, disciplinary issues, co-parenting, and reunification with the Children; (3) Father would submit to monthly drug and alcohol testing; and (4) Father would sign releases on the results of the testing and counseling sessions.   Respondent's Exhibit 1 (Matrimonial Stipulation).

Following Father's **Alford** plea, supervised visits resumed between Father and the Children.   Brian Zahn, a custody supervisor based in Rochester, New York, was appointed to supervise the visits with the Children in Father's home.   Mother eventually moved to Pennsylvania, but continued to transport the Children to the visits with Father.   The record reflects that, on or around December 12, 2013, Mr. Zahn prepared a report that he sent

*(Footnote Continued)* ————————

> An **Alford** plea is a *nolo contendere* plea, in which the defendant does not admit guilt but waives trial and voluntarily, knowingly and understandingly consents to the imposition of punishment by the trial court.  Provided the record reflects a factual basis for guilt, the trial court may accept the plea notwithstanding the defendant's protestation of innocence.   Typically, . . . a defendant is exchanging his plea for a reduced sentence or reduced charges.

**Commonwealth v. Snavely**, 982 A.2d 1244, 1244 n.1 (Pa. Super. 2009) (citing **North Carolina v. Alford**, 400 U.S. 25 (1970)) (internal citations omitted).

- 3 -

to the Court of Common Pleas of Monroe County ("New York trial court") regarding concerns he had with respect to Father's contact with Children,[4] although Mr. Zahn now denies there ever being an issue at any of Father's visits.[5]  N.T., 2/17/17, at 96.  Thereafter, in January of 2014, Father tested positive for cocaine.  ***Id.*** at 65, 86.

Based on the concerns expressed by Mr. Zahn, Mother filed an Order to Show Cause on December 19, 2013, and attached Mr. Zahn's affidavit and report.  On February 6, 2014, the New York trial court granted Mother's Order to Show Cause and modified the parties' existing custody order as follows.  Mr. Zahn would continue supervising all visits between Father and Children; Father's visits were reduced from three hours every weekend to three hours every other weekend; and Children were permitted to possess a

_____

[4] Mr. Zahn reportedly noted concerns regarding Father's behavior, including Father placing the three female children on his lap, involuntarily, while playing an arcade game; Father laying M.B. on top of him while playing a roller coaster game; and Father wrestling with the female children in his basement.  Respondent's Exhibit 5 (labelled Defendant's Exhibit 5 – Order to Show Cause).  Mr. Zahn's report also noted that Father appeared to be going through "some type of withdrawal symptom" and was "experiencing very fidigity [sic] movement, showing anxiousness for no apparent reason, as well as touching his face without cause and hypertension."  ***Id.***

[5] Attorney Brenda Korbal, the guardian *ad litem* ("GAL") appointed for the Children, testified that she did not find Mr. Zahn's denial to be credible and noted that, in her interviews with the Children, they described similar instances to those delineated in Mr. Zahn's report, which made the Children uncomfortable.  N.T., 5/8/17, at 36-39.

cellphone during the periods of visitation and would be allowed to contact Mother. Respondent's Exhibit 3 (New York Order of Court, 2/6/14).

Visits continued as scheduled until Mother received a telephone call from NYCPS informing her that Father again was being investigated for sexual assault against M.B. NYCPS referred the matter to Lackawanna County Children and Youth Services ("CYS") for investigation. The Children were interviewed by Mindy Hughes, the CYS caseworker assigned to the referral. N.T., 5/6/15, at 28. During the interviews, all four children testified that Father forced them to participate in "special time," a five-minute one-on-one conversation between Father and each of the Children.[6] N.T., 5/8/17, at 86. Ms. Hughes further noted that CYS's investigation was based on a claim that during one of the private conversations, Father "removed [M.B.'s] pants and her underwear. He, then, proceeded to digitally insert his fingers into [M.B.'s] vagina. And the child was able to get away from him and she hid in the bathroom." N.T., 5/6/15, at 33.

NYCPS and CYS directed Mother to file a Petition for Emergency Special Relief, which she did, along with a Petition to Modify Custody, on

_____

[6] The one-on-one "special time" with Father occurred in a den by the front of the house. Although Mr. Zahn testified that he could see the children during these conversations, N.T., 2/17/17, at 105, GAL testified that the Children were "consistent and credible" in expressing that "they were in a room alone with the Father with the door closed, at which time the Father made comments to them which made them uncomfortable." Respondent's Exhibit 6 (labelled Defendant's Exhibit 6 – Report/Recommendation of GAL).

April 29, 2015.  A hearing was held on Mother's petition on May 6, 2015.[7]

The trial court granted Mother's petition and denied Father any contact with

the Children.

On November 5, 2015, Father filed a Petition to Modify Custody.  After

several continuances, hearings were eventually held on Father's petition on

February 6, February 17, and May 8, 2017.  Mr. Zahn, the GAL, and both

Mother and Father testified.

On May 26, 2017, the trial court denied Father's Petition to Modify

Custody, concluding that it was in the best interests of the Children to have

no contact with Father.  Father timely filed a notice of appeal and a concise

statement of errors complained of on appeal.  The trial court filed its

Pa.R.A.P. 1925(a) opinion on July 21, 2017.

On appeal, Father presents the following issues for our review:

[I.]  Whether sufficient evidence existed to justify the Trial
Court's decision to deny Father's Petition to Modify the
Custody Order dated May 6, 2015, which completely
barred all contact between Father and his four children[?]

[II.] Whether the entry of Father's **Alford** Plea relating to the
charge of Endangering the Welfare of a Child constituted a
judicial admission that Father intentionally sexually

---

[7] Father failed to appear for the hearing, although the trial court noted on
the record that it was satisfied that Father had been properly served.  N.T.,
5/6/15, at 3-5.  Moreover, Mr. Zahn called the trial court the day of the
hearing and confirmed to the court that Father received notice of the
hearing.  Answer to Petition for Modification of Custody Order (Mother),
1/25/15, Ex. A.  Mr. Zahn subsequently denied speaking to the trial court
regarding Father's notice of the proceedings.

assaulted the minor child in question and justified a complete bar of contact with the [C]hildren[?]

Father's Brief at 4.

We review Father's issues according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> *R.M.G., Jr. v. F.M.G.*, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 2001 PA Super 126, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

> *R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's

conclusions. ***Ketterer v. Seifert***, 2006 PA Super 144, 902 A.2d 533, 539 (Pa. Super. 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citing ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004)).

Section 5328(a) of the Child Custody Act, 23 Pa.C.S. §§ 5321-5340, provides as follows.

**§ 5328.  Factors to consider when awarding custody.**

**(a)  *Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a)(1) (relating to consideration of child abuse).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has stated that trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). We further explained:

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

**A.V.**, 87 A.3d at 823.

In his first issue on appeal, Father contends that the evidence of record does not support the trial court's decision to deny Father contact with the Children. In so doing, Father alleges that "no competent evidence exists that suggests that Father poses a grave threat to any of his children, supervised or otherwise." Father's Brief at 45. Father challenges several findings made by the trial court and the testimony of the GAL.

Instantly, the trial court issued its decision on May 26, 2017, and considered all of the section 5328(a) best-interests factors. Trial Court Opinion, 5/26/17, at 4-8. The trial court found that the majority of the factors either weighed in favor of Mother or did not weigh in favor of either party. *Id.* The trial court further found that subsections 5328(a)(11), (12) and (15) were not relevant to the proceedings. In discussing the factors, the trial court expressed concern regarding Father's history of sexual abuse. Specifically, the trial court found that M.B. had been a victim of sexual abuse at the hands of Father, although Father entered an **Alford** plea to Endangering the Welfare of a Child. The trial court further determined that Father has continued to engage in inappropriate behavior with the Children, despite having only supervised visitation.

Ultimately, the trial court concluded that the Children's best interests would be served by prohibiting contact between Father and the Children. The trial court placed particular emphasis on Father's sexual abuse of M.B. and the Children's need for safety and stability. In this regard, the trial court stated the following:

> This [c]ourt believes without a doubt that Father had sexual contact with the youngest minor child. Although Father took an Alfred [sic] Plea to Endangering the Welfare of the Child, he still plead to the underlying facts regarding the sexual assault of the minor child. Father admitted that the District Attorney could prove those facts at trial. Further, Father's testimony that the events did not happen is inconsistent. Father testified that his plea was not to any sexual conduct involving the minor child. Later in his testimony, he said that the act was not intentional.

Father's credibility is an issue. Therefore, this factor strongly weighs in favor of Mother.

Father continued his inappropriate behavior when he was granted supervised visitation with the minor children. During Father's periods of supervised visitation, Father made each of the minor children have "special time" with him, which consisted of being in a room alone with Father with a partially closed door. One of the minor children testified that he had to sit on Father's lap during this special time even though the minor child told Father that made him uncomfortable. Father also attempted to discuss the incidents that led to his criminal charges with the oldest minor child despite the minor child's young age at the time. He also forced the three female minor children to sit on his lap despite them being visibly uncomfortable. Additionally, Father made the minor children try on bathing suits for him, even though the minor children were not swimming. Father would play "rollercoaster" with the children, which would consist of sitting on [sic] the minor children laying on top of him. He also tried to wrestle on the floor with the minor children, especially the females. The eldest daughter testified that Father forced her to kiss him on the lips despite her conveying that she was uncomfortable. Lastly, Father [tested] positive for cocaine during the time he was having supervised visitation. This court is highly concerned with the level of inappropriateness with the minor children even during periods of supervised visitation.

* * *

For the foregoing reasons, this [c]ourt believes it is in the best interest of the minor children for Father not to have contact with them. Not only has Father pled to the facts underlying the allegation of sexually abusing the youngest child, but when given the opportunity to have supervised visitation with the minor children, he continued to act inappropriately and make the minor children feel uncomfortable. This [c]ourt needs to ensure the minor children's safety and stability. Furthermore, Father fails to abide by [c]ourt [o]rders. This is evidenced by his positive drug screen for cocaine during his periods of supervised visitation, his failure to undergo any further drug screens, and attempting to contact the minor children on five different occasions despite this [c]ourt restricting him from doing so.

Trial Court Opinion, 5/26/17, at 4-5, 8 (citation to the record and footnote omitted).

Our exhaustive review of the record reveals that all of the trial court's findings are supported by evidence of record. Father presently asks this Court to reject the trial court's findings and credibility determinations upon which these findings are based, in favor of the findings that he proposes. Father's Brief at 45-57. We reject his request. As set forth above, we must accept the findings of the trial court that are supported by the evidence, and we must defer to the trial court's credibility determinations. *R.M.G., Jr.*, 986 A.2d at 1237; *see also M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa. Super. 2013) (rejecting the appellant's argument urging this Court to reconsider the trial court's findings with regard to the section 5328(a) factors).

Next, Father argues that the trial court erred in denying him contact with the Children based on his *Alford* plea because the Matrimonial Stipulation stated that Father would be permitted visits with the Children if he pled to endangering the welfare of a child. Father's Brief at 58-64. Father further contends that, even though he entered an *Alford* plea, he did not admit to any of the underlying facts in the criminal complaint. *Id*. at 60-61.

In rejecting Father's argument, the trial court stated the following:

> As previously discussed, "The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's

- 13 -

consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion." ***Robinson [v. Robinson]***, 645 A.2d [836, 838] (Pa. 1994). This [c]ourt considered Father's criminal case along with all of the other relevant evidence and custody factors. Thereafter, this [c]ourt determined it was not in the best interests of the minor children to have contact with Father.

Trial Court Opinion, 7/21/17, at 13.

As reflected in its Pa.R.A.P. 1925(a) opinion, the trial court comprehensively reviewed every factor in section 5328(a), set forth its determination on each factor, and the evidence relied upon for each such determination. Pursuant to our review of the record, we conclude that substantial evidence supports the findings of the trial court. The trial court's analysis of those factors related to the Children's safety, including in particular the various allegations of sexual abuse, was thorough. As the introductory language of section 5328(a) requires, the trial court gave weighted consideration to these factors.

Even if we were so inclined, we could not grant relief based upon Father's contention that the trial court based its decision on its position that Father admitted to intentionally sexually abusing M.B. when he entered an ***Alford*** plea to endangering the welfare of a child. Father's initial sexual-abuse allegation was only a part of the quantum of evidence introduced during the custody proceedings. Father's argument ignores the fact that the trial court gave weighted consideration to Father's inappropriate behavior toward the Children during his visits, the additional allegation of sexual

abuse against M.B. that prompted Mother's Petition of Modify Custody, and the testimony of the GAL and the Children, who indicated that they continued to feel uncomfortable during Father's supervised visits. In any event, our standard of review necessitates that "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 650 (Pa. Super. 2011).

Therefore, we conclude that the trial court did not abuse its discretion or commit an error of law in denying Father's petition to modify and denying Father's contact with the Children. Accordingly, we affirm the order of the trial court.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/18/2017